UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE A. DAVIS<br><br>      Plaintiff,<br><br>  v.<br><br>SAINT MARY'S CATHOLIC CEMETERY AND MAUSOLEUM; DIOCESE OF SACRAMENTO; AND ROMAN CATHOLIC BISHOP OF SACRAMENTO,<br><br>      Defendants. | No. 2:13-cv-01083-GEB-DAD<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT ROMAN CATHOLIC BISHOP'S MOTION FOR SUMMARY JUDGMENT** |

        Defendant Roman Catholic Bishop of Sacramento ("the RCB") moves for summary judgment, or in the alternative for partial summary judgment, on the claims alleged in Plaintiff's Complaint. Plaintiff's Complaint comprises federal harassment and retaliation claims alleged under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. Section 1981 ("Section

1

1981"); California claims of intentional infliction of emotional distress ("IIED") and violation of Title I Section 8 of the California Constitution; and a prayer for punitive damages under each claim. The claims concern Plaintiff's allegations that former RCB employee David Flores subjected him to a racially hostile work environment, and that the RCB retaliated against Plaintiff when he complained about the referenced hostile work environment by failing to rehire him. The RCB argues in its motion:

> The alleged acts by Flores [about which Plaintiff complains] do not rise to the level of creating a hostile work environment, and even if they did, [the RCB] acted reasonably to prevent harassment . . . ; and [t]here was no retaliation because [P]laintiff's separation [from employment] was planned before his complaint about Flores . . . ; Further, [t]here is no tort liability for [the RCB] because there were no extreme or outrageous acts against [P]laintiff that can be imputed to [the RCB]. And similarly, there is no evidence of malice or oppression toward [P]laintiff that would support an award of punitive damages.

(RCB's Mot. Supp. Summ. J. ("Mot.") 22:8-14, ECF No. 33-1.) Plaintiff opposes the motion. (Pl.'s Opp'n to RCB's Mot. ("Opp'n"), ECF No. 36.)

## I. LEGAL STANDARD

> A party is entitled to summary judgment if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' . . . The moving party has the burden of establishing the absence of a genuine dispute of material fact.

City of Pomona v. SQM North Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "A fact is 'material' when

. . . it could affect the outcome of the case." <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "A[] [dispute] of material fact is 'genuine' when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Anderson</u>, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B).

Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment . . . [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." <u>Beard v. Banks</u>, 548 U.S. 521, 527 (2006).

Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment,"

3

1  . . . the district court . . . [is] under no obligation to
2  undertake a cumbersome review of the record on the [nonmoving
3  party's] behalf. Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011,
4  1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279
5  (9th Cir. 1996)).

## II.  UNCONTROVERTED FACTS

The following uncontroverted facts concern the motion.

On August 11, 2011, "Plaintiff was . . . hired to work at St. Mary's Cemetery," which is owned by the RCB. (Pl.'s Opp'n to RCB's Statement of Undisputed Material Facts ("SUF") No. 1, 8-9 ECF No. 36-1.) Plaintiff's "first season" of work lasted approximately four months, until "December 2011," and his "second season" lasted approximately five months, "from May 2012 to October 2012." (Pl.'s Additional Statement of Undisputed Material Facts ("Pl.'s Addt'l SUF") No. 1, ECF No. 38-1 at 22.) Plaintiff "was assigned to work on the grave relocation project along with three other temporary workers." (SUF No. 2.) "Plaintiff and grave relocation project coworker Eric Conerly were both African-American, and the other two workers were Caucasian and Mexican." (SUF No. 3.) "The grave relocation project was a temporary activity . . . ." (SUF No. 8.)

"At the end of [Plaintiff's first season of work in] December 2011, [P]laintiff was laid off from his temporary position on the grave relocation project because of the onset of the rainy season." (SUF No. 10.) "In April 2012, [P]laintiff was interviewed and rehired by [Assistant Director of Cemetery Operations] [Frank] Espinosa [("Espinosa")]" for his second season of work. (SUF No. 11.) "[W]ork on the grave relocation

1  project was completed in September 2012." (SUF No. 13.) Plaintiff
2  "was laid off in October 2012." (SUF No. 15.)
3      "[W]hile [Plaintiff] was employed at the cemetery, he
4  became the [target] of . . . comments and conduct by David
5  Flores, who was the foreman of the unionized grounds keeping
6  workers at the cemetery." (SUF No. 22.) "Flores would [ask
7  Plaintiff] . . . 'where's the beer at?'" and "Flores would [also]
8  ask [Plaintiff] 'where's the weed at?' and . . . mimick[] as if
9  he was smoking a marijuana joint." (SUF Nos. 27-28.)
10     "[O]n two occasions [Plaintiff] heard Flores use the
11 word 'nigger' in the workplace." (SUF No. 32.) "The first time
12 was in 2011," "during [Plaintiff's] first season [of work],"
13 "when Flores slowly drove past [P]laintiff in a work truck and
14 [P]laintiff heard him say it – although [P]laintiff believes the
15 specific word used by Flores was 'nigga.'" (SUF No. 33; Pl.'s
16 Addt'l SUF No. 28.) "Plaintiff told . . . Phil Mendoza
17 [("Mendoza")]," who "held the title of assistant foreman," about
18 the incident. (SUF No. 34, 55.) "Mendoza told Plaintiff to just
19 stay away from Flores, do his job, and don't do anything to lose
20 his job." (Pl.'s Addt'l SUF No. 33.) "The second incident
21 occurred in the break room at lunch in mid-2012, when Flores
22 entered the room and said 'niggers work hard—get up and work,' in
23 a way that [P]laintiff felt was directed toward him." (SUF No.
24 35.) "Mendoza . . . [was] present when [Flores] said [this]."
25 (Pl.'s Addt'l SUF No. 30.) "Plaintiff [also] spoke with . . .
26 Mendoza [about Flores' use of the word 'nigger' in the lunch
27 room]." (SUF No. 36.)
28     Plaintiff "heard Flores say the Spanish phrase 'pinche

5

[mayate on two occasions],' which he understood to be the Spanish equivalent of 'nigger'". (SUF No. 38; Pl.'s Addt'l SUF No. 27.) "The first time," which "occurred during Plaintiff's first season of employment (August 2011—December 2011)," "[Plaintiff] heard Flores say the phrase as [P]laintiff was walking away from the work office at the cemetery . . . . Plaintiff [did not] complain to anyone at the cemetery about this first incident." (SUF Nos. 39-40; Pl.'s Addt'l SUF No. 27.) "The second time," which "occurred . . . during Plaintiff's second season," Plaintiff "heard Flores say the phrase as he walked by." (SUF No. 41; Pl.'s Addt'l SUF No. 29.) "Plaintiff talked with Mendoza about the second [time Flores used the phrase 'pinche mayate'] . . . ." (SUF No. 42.)

"In a staff meeting on September 25, 2012, [P]laintiff finally reported that Flores had said the word 'nigger' in the workplace." (SUF No. 49.) "Espinosa responded by suspending Flores and ordering him off the premises, and then conducting an investigation." (SUF No. 50.) "Based on the results of the investigation, three days later, on September 28, 2012, Espinosa fired Flores." (SUF No. 53.) The Diocese of Sacramento's Lay Personnel Handbook prescribes: "If an employee feels that he or she has experienced or witnessed harassment, he or she is to notify his or her immediate supervisor, the pastor, the principle . . . or, in the alternative, the Office of Lay Personnel or the Superintendent of Catholic Schools."[1] (Pl.'s Addt'l SUF No. 6.)

---

[1] The Diocese owns St. Mary's Cemetery (See SUF Nos. 4, 6, 9, 42-43.) The RCB asserts in the caption for its summary judgment motion that it was "incorrectly also sued as 'Saint Mary's Catholic Cemetery and Mausoleum' and 'Diocese of Sacramento.'" Therefore, the Court treats references to the "Diocese" as also referring to the RCB for purposes of this motion.

6

Mendoza, who "reported to and [was] supervised by . . . Espinosa," "did not feel a need to report [the fact that he witnessed Flores use the word 'nigger' in the lunch room] because he believed that although he held the title of assistant foreman, he only had supervisory duties when Flores was not on the premises, and that when Flores was present, he was just another worker like Davis." (Pl.'s Addt'l SUF No. 4; SUF No. 55.)

### III. DISCUSSION

#### A. Plaintiff's Harassment Claims

##### i. Hostile Work Environment

The RCB seeks summary judgment on Plaintiff's federal harassment claims in which he alleges the RCB permitted Flores to subject him to a racially hostile work environment. The RCB argues that what Plaintiff characterizes as a "hostile work environment" actually consisted of "isolated and stray remarks insufficiently extreme or pervasive enough to have changed the terms and conditions of Plaintiff's employment," which is essential to establish federal hostile work environment claims. (Mot. 7:16-18.)

Since "[h]ostile work environment claims alleged under Title VII contain the same elements of a § 1981 hostile work environment claim the 'legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action.'" Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1122 n.3 (9th Cir. 2008) (citing Manatt v. Bank of America, 339 F.3d 792, 797 (9th Cir. 2003)). The statutes prohibit

> the creation of a hostile work environment . . . . In determining if an environment is so hostile as to violate Title VII [or

7

> Section 1981], we consider whether, in light of all the circumstances the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.
>
> . . . .
>
> A Plaintiff must show that the work environment was both subjectively and objectively hostile . . . . In evaluating objective hostility of a work environment, the factors to be considered include the 'frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.

McGinest v. GTE Serv Corp, 360 F. 3d 1103, 1112-13 (9th Cir. 2004) (internal quotation marks and citations omitted). "[A]llegations of a racially hostile workplace must be addressed from the perspective of a reasonable person belonging to the racial . . . group of the plaintiff." (Id. at 1115)

The uncontroverted facts establish that Plaintiff heard the words "nigger," "nigga," and the Spanish phrase "pinche mayate" in the workplace. (SUF Nos. 33, 35, 38.) The Ninth Circuit states in McGinest: "It is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination[; and t]his word is perhaps the most offensive and inflammatory racial slur in English. 360 F.3d at 1116; see also Daso v. The Grafton School, Inc., 181 F. Supp. 2d. 485, 493 (D. Md. 2002) (stating: "The word 'nigger' is more than [a] 'mere offensive utterance,'" and "[n]o word in the English language is as odious or loaded

8

1 with as terrible a history.") The uncontroverted facts also
2 evince that during Plaintiff's first season, through the end of
3 his second season, Flores would ask Plaintiff "where's the beer?"
4 and "where's the weed?' [while making a gesture as if he was
5 smoking marijuana]." (SUF Nos. 27-28.) These questions and the
6 gesture are relevant in evaluating whether a hostile work
7 environment was created, since they "could be construed as a not-
8 so-subtle attempt to [say that Plaintiff uses] [marijuana] and
9 [alcohol] simply because he is [an African American]." Daniels v.
10 Essex Group, Inc., 937 F.2d 1264, 1273 (7th Cir. 1991).

11 This evidence creates a genuine dispute of material
12 fact on the issue of whether Flores subjected Plaintiff to a
13 hostile work environment because he is an African American.
14 Therefore, this portion of the motion is denied.

### ii. Whether the RCB Can be Liable for Flores' Conduct

#### a. Vicarious Liability

17 The RCB further argues its motion should be granted on
18 Plaintiff's federal harassment claims, contending only "acts of
19 harassment by a supervisor can subject an employer to vicarious
20 liability[] under [Plaintiff's federal claims]," and the
21 vicarious liability principle does not apply "[b]ecause Flores
22 [was] not a supervisor" under this principle. (Mot. 9:23-24,
23 10:8.)

> [A]n employer is vicariously liable for a supervisor's creation of a hostile work environment. The Supreme Court . . . defined 'supervisor' . . . as an employee 'empowered by the employer to take tangible employment actions against the victim.' Tangible employment actions include hiring, firing, demoting, promoting, transferring, or disciplining the victim.

9

U.S. E.E.O.C. v. Wedco, Inc., No. 3:12-CV-00523-RCJ, 2014 WL 6872780, at *6 (D. Nev. Dec. 4, 2014) (quoting Vance v. Ball State University, 133 S. Ct. 2434, 2439, 2441, 2443 (2013)). "Supervisor status is based on job function rather than job title, and depends on specific facts about the working relationship [between the plaintiff and the alleged supervisor]." Vance, 133 S. Ct. at 2465.

The RCB argues "Flores had no authority to hire or fire [P]laintiff, [or] to affect [P]laintiff's pay or benefits, and no ability to reassign [P]laintiff," (Mot. 10:2-3), and supports this argument with the following uncontroverted facts:

> Although Flores held the title of 'foreman,' he simply oversaw the daily tasks of grounds crew workers, such as determining where in the cemetery they would be working and making sure those tasks were completed.

(SUF No. 23.)[2]

The RCB has shown that Flores was not a supervisor under the federal vicarious liability principle.

### b. The RCB's Exposure to Liability for Co-Worker Harassment

The RCB also argues "because Flores is not a supervisor . . . [the RCB] can only be liable if it knew of the harassment and failed to stop it," and that it is not liable because "knowledge of the alleged conduct by Flores did not reach a sufficient management-level employee until [P]laintiff reported it to Frank Espinosa on September 25, 2012," after which

---

[2] Since Plaintiff has not presented evidence "specifically [controverting these duly supported] facts identified in the [movant's] statement of undisputed facts," Plaintiff "is deemed to have admitted the validity of the[se] facts." Beard v. Banks, 548 U.S. 521, 527 (2006).

10

1  "Espinosa . . . acted immediately [by] conduct[ing] an
2  investigation, [following which] Flores was discharged." (Mot.
3  10:8-26.)
4         Plaintiff rejoins: "given how many times Plaintiff
5  complained to Mendoza," there is "ample evidence to support the
6  [RCB's] liability for co-worker harassment," and quotes, *inter
7  alia*, the following principle cited in Swinton v. Potomac Corp.
8  in support of this argument (Opp'n 12:15-16, 13:10-14):
9  "[i]naction of even relatively low-level supervisors may be
10 imputed to the employer if the supervisors are made responsible,
11 pursuant to company policy, for receiving and acting on
12 complaints of harassment." 270 F.3d 794, 810 (9th Cir. 2001).
13        The Ninth Circuit stated in Swinton:

> If . . . the harasser is merely a co-worker
> [rather than a supervisor], the plaintiff
> must prove that the employer was negligent,
> *i.e.* that the employer knew or should have
> known of the harassment but did not take
> adequate steps to address it
>
> . . . .
>
> [I]t [is the plaintiff's] burden . . . to
> prove that **management** knew of the harassment
> or should [have] known of [it]
>
> . . . .
>
> [An employee] who lacks [management]
> authority [to change the conditions of the
> harassee's employment] **is nonetheless
> classified as 'management' if he has an
> official or strong de facto duty to act as a
> conduit to management for complaints about
> work conditions.**

26 Swinton, 270 F.3d at 803-05 (citing Lamb v. Household Credit
27 Servs., 956 F. Supp. 1511, 1516 (N.D. Cal. 1997) (finding "the
28 clock starts running on employer liability when notice is given

11

to certain employees, who may or may not have any management-level authority, but who have responsibility for relaying . . . harassment complaints pursuant to an express policy promulgated by the employer.")

The RCB's motion does not address Plaintiff's argument under Swinton that "a supervisor who lacks [management] authority is nonetheless classified as 'management' if he has an official or strong de facto duty to act as a conduit to management for complaints about work conditions." 270 F.3d at 805. Therefore, this portion of its motion is denied. See Wahlman v. DataSphere Technologies, Inc., 2014 WL 794269, at *10, No. C12-1997JLR (W.D. Wash. Feb. 27, 2014) (finding "factual disputes prevent[ed] summary judgment" where "it [was] disputed whether [the harasser's] conduct in front of [another employee] constituted notice to [the defendant] of the harassing behavior, and whether [the defendant was] negligent for taking no action when [that employee] witnessed such conduct.")

### B. Plaintiff's Federal Punitive Damages Prayers

The RCB seeks summary judgment on Plaintiff's federal punitive damages prayers, essentially arguing that the only arguable basis for federal punitive damages is Mendoza's "fail[ure] to report [Flores' alleged harassing] conduct," and cites the following uncontroverted facts, contending they establish that Mendoza did not have "a malicious design" when he failed to report Flores' harassing conduct, which is required to support a punitive damages claim (Mot. 21:20-24):

> Mendoza acknowledged it was an error not to report [Flores' use of the word 'nigger' in the lunch room during Plaintiff's second

12

>season of work,] but . . . he did not feel a need to report [it] because he believed . . . he only had supervisory duties when Flores was not on the premises, and that when Flores was present, he was just another worker like Davis.

(SUF No. 55.)[3]

"[T]he punitive damage standard is the same [under Section 1981] as [it is] for Title VII." E.E.O.C. v. Swift Transp. Co., 45 F. Supp. 2d 1036, 1040 (D. Or. 1999).

42 U.S.C. § 1981a(a)-(b)(1) prescribes:

>In an action brought by a complaining party under . . . 42 U.S.C. 2000e-2 [(Title VII),] . . . . [a] complaining party may recover punitive damages . . . if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

The Supreme Court states in Kolstad v. American Dental Ass'n.: "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination . . . . Applying this standard in the context of [the federal discrimination statute,] an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." 527 U.S. 526, 535-36 (1999). "[N]egligent decisionmaking and poor communication among managers may properly give rise to compensatory liability under Title VII, but . . . such acts [would not] be deterred by an award of exemplary damages." Ngo v.

---

[3] Plaintiff's does not "specifically [controvert this duly supported fact]." Therefore, Plaintiff "is deemed to have admitted the validity of th[is] fact[]." Beard, 548 U.S. at 527.

13

1  Reno Hilton Resort Corp., 140 F.3d 1299, 1305 (9th Cir. 1998).
2  "[T]he showing required [for punitive damages] beyond the
3  threshold level of intent required for compensatory liability is
4  willful and egregious conduct, or conduct that displays reckless
5  indifference (and not mere negligence) to the [p]laintiff's
6  federal rights such that the defendant **almost certainly knew that**
7  **what he was doing was wrongful and subject to punishment.**"
8  E.E.O.C. v. California Psychiatric Transitions, Inc., 644 F.
9  Supp. 2d 1249, 1285 (E.D. Cal. 2009).
10             Mendoza's uncontroverted misunderstanding about his
11 reporting responsibilities does not support drawing a reasonable
12 inference that he acted maliciously or with reckless disregard of
13 Plaintiff's federally protected rights.
14             Therefore, this portion of the motion is granted.
15             **C. Plaintiff's Retaliation Claims**
16             The RCB argues its motion should be granted on
17 Plaintiff's federal retaliation claims in which Plaintiff alleges
18 the RCB's failure to rehire him after he finished working on the
19 grave relocation project was retaliation for Plaintiff's
20 complaint to Espinosa about Flores' harassing behavior. (Compl.
21 ¶¶ 34-43.) Specifically, the RCB asserts:

>  the undisputed evidence shows that not only
>  did [P]laintiff understand he was [an] at-
>  will [employee] and would be separated [from
>  his employment at the cemetery] when the
>  grave relocation project ended, and that the
>  project had in fact ended in September 2012,
>  he was aware of those facts before the
>  [staff] meeting on September 25, 2012, and
>  thus before he made the complaint to Espinosa
>  about Flores. Moreover, [P]laintiff further
>  concedes that he was never told he would be
>  returned to work at the cemetery after
>  October 2012, and he never made an attempt to

1
2
>     contact Espinosa or someone at the cemetery to ask about returning to work.

3 (Mot. 14:8-20.)

Plaintiff rejoins: "[I]n essence, Espinosa decided not to rehire Plaintiff after his complaint [about Flores' harassing behavior; and this failure] is equal to terminating an employee for complaining because both have the same ultimate effect of discouraging employees from complaining in the first place." (Opp'n 14:20-22.)

Title VII and Section 1981 retaliation claims "share identical legal standards." (Williams v. Tuscon Unified Sch. Dist., 316 F. App'x 563, 564 (9th Cir. 2008). Plaintiff must show in his federal retaliation claims "(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

Here, the essence of the RCB's position is that Plaintiff has not suffered an adverse employment action because he had no reason to conclude he would be rehired. The RCB relies on the following uncontroverted facts in support of its position that Plaintiff had no reasonable expectation that he would be rehired: "Plaintiff knew that the grave relocation project was temporary in nature, and no one ever specifically told him he would be [asked to] return[] as a worker at the cemetery once the project was completed or that he would never be let go." (SUF No. 14.) Plaintiff disputes this assertion, responding:

>     Prior to his harassment complaint against Flores to Espinosa, Plaintiff and the other relocation workers were told that at least

> some of them might be hired on in the future. However, immediately after Plaintiff's complaint, Espinosa reversed himself and said that nobody on the project would be invited back

(Pl.'s Response to Def.'s SUF No. 14.) Plaintiff also cites the following portion of former co-worker Timothy Donohue's declaration as support for his position that he was not rehired because of his complaint to Espinosa about Flores' harassing conduct:

> Two days before I and the other [grave relocation project] crew were let go, I asked [Espinosa] if I would be able to return to work the following summer. [Espinosa] told me no, that none of the [grave relocation project] crew . . . would be allowed to come back because of 'the whole Jesse fiasco.'

(Decl. of Timothy Donohue ¶ 14, Tillis Decl. Ex. E.)

However, Plaintiff has not presented evidence from which a reasonable inference could be drawn that he reapplied to work for the RCB after the grave relocation project ended. Nor has Plaintiff presented evidence that he knew what Espinosa said about the "the whole Jesse fiasco" before he decided not to reapply; therefore, he has not shown that whatever was meant by what Espinosa said had any bearing on Plaintiff's decision not to reapply for another temporary position at the cemetery. Cf. Yartzoff v. Thomas, 809 F.2d 1371, 1374-75 (9th Cir. 1987) (affirming an order granting the defendant's summary judgment motion on one of the plaintiff's retaliation claims where the plaintiff "failed to . . . appl[y]" for a promotion, and indicating that non-applicants may only pursue a Title VII action where they can show they were "discouraged from applying.")

Since the evidentiary record does not contain facts

16

from which a reasonable inference could be drawn that Plaintiff applied for another temporary position at the cemetery, or was chilled from applying by anything the RCB did, the RCB's motion on Plaintiff's federal retaliation claims is granted.

### D. Plaintiff's California Constitution Claim

The RCB seeks summary judgment on Plaintiff's California Constitution claim in which Plaintiff alleges the RCB "depriv[ed] him of employment opportunities . . . in violation of Article 1, Section 8 of the California Constitution," (Compl. ¶ 49), quoting the Ninth Circuit in Strother v. S. California Permanente Med. Grp. for the following finding to support its argument that Article I Section 8 does not apply to Plaintiffs claims (Mot. 17:12-16): "[Article I] § 8 governs actions which result in the complete exclusion of an individual from employment with a particular employer, and does not reach conduct affecting particular aspects of an individual's job." 79 F.3d 859, 872 (9th Cir. 1996).

Article I Section 8 of the California Constitution, which prescribes that "[a] person may not be disqualified from entering or pursuing . . . employment because of [his or her] . . . race," does not provide a "direct cause of action," and instead "must be 'asserted through a state tort law mechanism,' such as wrongful termination in violation of public policy," which Plaintiff has not alleged. Scott v. Solano Cnty. Health & Soc. Servs. Dep't, 459 F. Supp. 2d 959, 970 (E.D. Cal. 2006) (quoting Himaka v. Buddhist Churches of Am., 919 F. Supp. 332, 334-35 (N.D. Cal. 1995) (finding "there must exist a state tort law mechanism in order to bring a private cause of action to

17

1  vindicate the public policy against discrimination underlying
2  Article I Section 8 [of the California Constitution].") Plaintiff
3  has not properly asserted an Article I Section 8 claim. Further,
4  even assuming arguendo that this claim is properly alleged, the
5  summary judgment factual record does not contain facts from which
6  a reasonable inference could be drawn that Plaintiff applied for
7  another temporary position with the RCB. Therefore, this portion
8  of the motion is granted.

### E. Plaintiff's IIED Claim

The RCB seeks summary judgment on Plaintiff's IIED claim in which he alleges he "suffer[ed] humilitiation, mental anguish and severe physical and emotional distress" resulting from "intentional, outrageous, and malicious [acts]." (Compl. ¶ 56.) The RCB argues:

> [Plaintiff's] only option [to state a claim for IIED] . . . is to point to the alleged harassing conduct by Flores. This effort fails . . . . Although an employer can be vicariously liable for the torts of an employee committed within the scope of his employment . . . as a matter of law, harassment is not within the scope of employment . . . .

(Mot. 18:12-17.)

"An employer's liability extends to torts of an employee committed within the scope of his employment." John R. v. Oakland Unified Sch. Dist., 48 Cal. 3d 438, 453 (1989). "[I]f the employee inflicts an injury out of personal malice, not engendered by the employment or acts out of personal malice unconnected with the employment, or if the misconduct is not an outgrowth of the employment, the employee is not acting within the scope of employment." Farmers Ins. Grp. v. Cnty. of Santa

Clara, 11 Cal. 4th 992, 1005 (1995) (internal quotation marks and citations omitted).

Since an employer's liability under California law only extends to actions conducted by an employee within the scope of their employment, which does not include harassment, Plaintiff cannot impute Flores' conduct to the RCB as Plaintiff's basis for seeking to expose the RCB to liability for Plaintiff's IIED claim. See John R., 48 Cal. 3d at 453. Therefore, the RCB's motion on Plaintiff's IIED claim is granted.

## IV. CONCLUSION

For the stated reasons, the RCB's motion is GRANTED on Plaintiff's state claims, on Plaintiff's federal retaliation claims, and on Plaintiff's prayers for punitive damages for his federal harassment claims. The RCB's motion is DENIED on Plaintiff's federal harassment claims.

Dated: June 28, 2015

GARLAND E. BURRELL, JR.
Senior United States District Judge